RYTKONEN *v.* LOJACONO.

1. PHYSICIANS AND SURGEONS—STANDARD OF SKILL—NEGLIGENCE.

In action against a local physician for malpractice wherein outstanding element of alleged negligence consisted of failure to use safety pin in fastening short drainage tube from sinus near pleural cavity, testimony of local physician that he would have used safety pin and that he had seen them used in named famous hospitals *held*, reversible error since standard of skill required of a local physician is that possessed by the average of the members of the profession in similar localities.

2. SAME—DIFFERENT METHODS OF TREATMENT.

Doctor is not guilty of negligence in using method of treatment of patient, recognized as proper, even though all his local contemporaries use another method.

3. MALPRACTICE—INCOMPETENT TESTIMONY—RECORD.

In action for negligent malpractice, incompetent testimony of local physician as to his own method of treatment without stating whether defendant's method was permissible *held*, reversible error, where record does not demonstrate that it was not prejudicial.

4. SAME—PURPOSE OF FATAL OPERATION.

In action for negligent malpractice, plaintiff *held*, entitled to have her theory submitted to jury that rib resection operation on deceased husband was unnecessary and performed to locate lost drainage tube rather than for better drainage where there was medical testimony that such operation was not immediately necessary, and defendant advised it, participated in a medical way, was present and requested exploration.

5. SAME—CONSENT OF WIFE.

Evidence that plaintiff, wife of now deceased patient, did not learn of rib resection operation from which husband died until after its performance *held*, competent under her theory that it was unnecessary and made to locate drainage tube lost through defendant's negligence and not proper treatment for tubercular patient.

Appeal from Marquette; Bell (Frank A.), J. Submitted October 11, 1934. (Docket No. 80, Calendar No. 38,042.) Decided December 10, 1934.

Case by Lillian Rytkonen, special administratrix of the estate of P. Alfred Rytkonen, deceased, against Salvatore Lojacono for alleged negligent malpractice causing death of plaintiff's decedent. Verdict and judgment for plaintiff. Defendant appeals. Reversed and new trial granted.

*M. J. Kennedy,* for plaintiff.

*Douglas, Barbour, Desenberg & Purdy,* for defendant.

FEAD, J. Plaintiff had judgment of $8,000 in action for negligent medical malpractice.

Her husband, a druggist, contracted tuberculosis in 1925. On advice of the Mayo clinic he entered a sanatorium in Colorado and remained a year. On leaving, he was advised to continue pneumothorax treatments and to see defendant for them. Defendant was in charge of Morgan Heights Sanatorium, a county tuberculosis hospital at Marquette. After two months at the sanatorium under defendant's care, deceased returned home but continued to receive pneumothorax treatments from defendant monthly from February, 1927, to January, 1931. During that time he worked for his brother in a moving picture theater at a wage of $25 per week, handling advertising and taking tickets. Plaintiff also worked for wages part of the time. In 1930, deceased again visited the Mayo clinic and was advised to have a thoracoplasty, a major operation.

On January 22, 1931, deceased had influenza, with bronchial complications, and his doctor advised him

to again enter defendant's sanatorium. He did so, and remained until his death, March 19th. Defendant found fluid in deceased's left lung. On January 30th a phrenoctomy was performed by Dr. John Alexander of the University of Michigan, with deceased's written consent. At times defendant removed pus from the lung by aspiration. On February 28th he discovered that a sinus had formed between the pleural cavity and the outside, and two days later he began permanent drainage by means of a catheter inserted between the ribs and connected with a longer tube. The catheter bothered the patient and, on March 16th, defendant removed it and inserted a tube three or four inches long, which he anchored by wrapping adhesive tape around it with the ends stuck on the chest to keep the tube from working into the body. The next morning the tube was missing. It had slipped into the body and, on an autopsy, was found lodged along the spinal column.

March 13th defendant had requested plaintiff to call in a surgeon for consultation relative to her husband's condition. She engaged Dr. McIntyre, who promised to see the patient, but did not do so. After repeated requests from plaintiff, and after defendant had told him about losing the tube, Dr. McIntyre went to the sanatorium, saw the X-ray and fluoroscope findings but did not see the patient, and, on consultation with defendant, they agreed that a rib resection operation be performed, the operation involving removal of a portion of a rib to permit better drainage. The operation was performed at the sanatorium in defendant's presence on March 19th by Drs. McIntyre and Hartt, and the patient died a few hours later.

The negligence claimed is that defendant failed to properly fasten the short drainage tube, proper practice requiring that, in addition to taping, a safety pin be inserted into or through the tube to prevent it slipping into the body; that he caused the operation to be performed without consent of the patient or plaintiff and without disclosing to them that the tube had been lost in the pleural cavity; that the operation was unnecessary to the patient's welfare but in fact was performed to recover the tube; that the operation was negligently performed in that delays were caused on two occasions during its progress by failure to have necessary surgical supplies at hand; and that delay and shock to the patient were caused by the surgeons, at defendant's request, exploring the chest with their fingers to locate the tube.

Most of the defendant's complaints are directed to the admission of testimony. The most serious concerns the testimony of Dr. Talso. An outstanding element of plaintiff's case was that defendant was negligent in not using the safety pin method of fastening the short drainage tube. Defendant said he had always used the method he employed in the instant case and never before had lost a tube. Other physicians, for the defense, said the method used by defendant was in accord with proper practice, although most or all of them generally used a safety pin. Plaintiff's medical witnesses said the customary practice of the community and like places was to use a safety pin, some said they had never seen any other method used, but they did not say the method employed by defendant was not recognized as proper practice.

Examination of Dr. Talso, the local physician who performed the autopsy, was directed to his own

methods of practice, characteristic but separated excerpts being:

"*Q*. What kind of tubes are used for drainage in the pleural cavity, by physicians and surgeons of ordinary skill, experience and ability in this or similar localities? * * *

"*A*. I use a half-inch thick tube. * * *

"*Q*. How do you fasten the tube?

"*A*. I usually put a safety pin at the end of the tube and fasten it to the side of the body by adhesive plaster, nine or ten inches long. * * *

"*Q*. Have you ever seen a rubber tube inserted to drain empyema, fastened with a small strip of adhesive?

"*A*. No, I use the safety pin at the end of the tube."

He was permitted to testify that he had seen the safety pin method used at the Mayo clinic and Augustana hospital.

Dr. Talso's testimony in this respect was error. Defendant is not to be charged with the peculiar skill or methods of practice used in famous medical institutions. Nor is the treatment another physician would have used under the circumstances the test. *Wood* v. *Vroman*, 215 Mich. 449, 465. The rule is firmly established that defendant was bound to use the degree of diligence and skill which is' ordinarily possessed by the average of the members of the profession in similar localities. *Miller* v. *Toles*, 183 Mich. 252 (L. R. A. 1915 C, 595); *Czajka* v. *Sadowski*, 243 Mich. 21. Dr. Talso's testimony was not cured by a general statement that his methods have been used by physicians in the same and similar communities. He did not say other methods were not recognized as proper.

Plaintiff claims, however, the error was not prejudicial because most of the other doctors customarily use the safety pin method. We think, on the contrary, the case has features which render it particularly inadvisable that the rule be here relaxed. It would be rather natural for a jury to incline toward condemning the method used by defendant because of the fact that the tube slipped (*res ipsa loquitur*), and also because the safety pin method appeals to the layman as mechanically safer. Such inclination makes it especially necessary that the issue be kept clear and not confused. Defendant's liability does not rest upon the methods actually used by other doctors of the vicinity or elsewhere but upon what is recognized by them as good practice. Where there is an opportunity for choice, the doctor is not guilty of negligence in using a method so recognized even though all his local contemporaries may employ another method. Dr. Talso's failure to state whether the method used by defendant was permissible would permit the jury to infer that he thought it was not, without his saying so.

We think, under the circumstances, the record does not demonstrate that the incompetent testimony was nonprejudicial and it must be held reversible error.

Defendant contends he is not responsible for negligence in the operation because the surgeon had charge of it. *Brown* v. *Bennett,* 157 Mich. 654.

Whether deceased consented to the operation was an issue of fact. All the doctors agreed the tube in the chest should be taken out because it could cause harm but none felt it was immediately dangerous, and some thought no exploration should have been made for the tube during the operation but it should

have been left to later treatment. There was medical testimony that an operation was unnecessary, in support of plaintiff's claim that it was done merely to find the tube.

Upon plaintiff's theory that the operation was performed to find the tube and was not by way of proper treatment, and was done without deceased's consent, defendant would be liable for the manner of its performance because he advised it, participated in a medical way, was present at it and requested the exploration to find the tube. *Franklyn* v. *Peabody*, 249 Mich. 363.

Plaintiff was entitled to have her theory of defendant's liability submitted to the jury.

Defendant also complains because plaintiff testified she did not discover that the operation was to be, or had been, performed until after it was done. Plaintiff's consent to the operation was unnecessary because her husband was able to give his own consent. Nevertheless, plaintiff had been requested by defendant to consult a surgeon, she had engaged Dr. McIntyre, and the failure of defendant to notify her that an operation was to be performed, particularly in view of the inconclusive claim that deceased's consent had been obtained, was competent upon plaintiff's claim that the operation was concealed from the interested parties and was done for the purpose of finding the tube. In view of the above, it is unnecessary to discuss the other questions raised.

Judgment reversed, with new trial, and costs.

Nelson Sharpe, C. J., and Potter, North, Wiest, Butzel, Bushnell, and Edward M. Sharpe, JJ., concurred.