# STATE OF MICHIGAN

# COURT OF APPEALS

PAULETTE ELHER,

        Plaintiff-Appellant,

v

DWIJEN MISRA, JR., M.D., MURPHY & MISRA, M.D., P.C., and WILLIAM BEAUMONT HOSPITAL,

        Defendants-Appellees,

and

PREFERRED MEDICAL GROUP and PREFERRED FAMILY MEDICINE,

        Defendants.

FOR PUBLICATION
December 2, 2014

No. 316478
Oakland Circuit Court
LC No. 2011-116694-NH

Before: BECKERING, P.J., AND HOEKSTRA AND GLEICHER, JJ.

HOEKSTRA, J. (*concurring in part*, *dissenting in part*).

I concur in the majority's analysis of the res ipsa loquitur issue. However, I respectfully dissent from the majority's analysis regarding the admissibility of the testimony of plaintiff's expert because, in my judgment, the trial court did not abuse its discretion in excluding the expert testimony of Dr. Paul Priebe and, for this reason, I would affirm the trial court's grant of summary disposition.

To prevail in a medical malpractice action, a plaintiff must prove the following: "(1) the applicable standard of care, (2) breach of that standard by defendant, (3) injury, and (4) proximate causation between the alleged breach and the injury." *Wischmeyer v Schanz*, 449 Mich 469, 484; 536 NW2d 760 (1995). See also MCL 600.2912a. Failure to prove any one of these elements "is fatal" to a plaintiff's claim. *Cox v Flint Bd of Hosp Managers*, 467 Mich 1, 10; 651 NW2d 356 (2002). Expert testimony is required to establish the applicable standard of care and the breach of that standard. *Kalaj v Khan*, 295 Mich App 420, 429; 820 NW2d 223 (2012). The proponent of expert testimony bears the burden of establishing both its relevance

and admissibility. *Edry*, 486 Mich at 639.[1]  See also MCL 600.2955; MRE 702.  When seeking to offer expert testimony on the standard of care and a breach thereof, the proponent of the evidence must demonstrate the witness's knowledge of the applicable standard of care. *Decker v Rochowiak*, 287 Mich App 666, 685; 791 NW2d 507 (2010).

In the present case, the central dispute between the parties' experts is this:  whether clipping of the common bile duct constitutes an inherent risk involved with undergoing a laparoscopic cholecystectomy, such that clipping this duct during the procedure is not a breach of the standard of care, or whether such action must always be regarded as a breach of the standard of care in the absence of scarring or inflammation.  Defendants maintain that a common bile duct injury is a known complication to a laparoscopic cholecystectomy which may occur even when—as in this case—the surgeon has performed the procedure in a reasonable manner consistent with the governing standard of care.  Dr. Priebe, in contrast, has opined that, in the absence of scarring or inflammation, the standard of care requires a physician performing a laparoscopic cholecystectomy not to clip the common bile duct under any circumstance.  Because Dr. Dwijen Misra clipped the common bile duct during plaintiff's procedure, Dr. Priebe opined that Dr. Misra breached the standard of care.

In reviewing Dr. Priebe's deposition testimony it becomes clear, however, that he provides no basis for his understanding regarding what the standard of care required or the manner in which it was breached.  Rather than focus on the standard of care demanded by the medical community, he has conceded that his views regarding the breach he asserts in this case are rooted entirely in his own "belief system," for which he fails to provide any supporting authority.  The following excerpts from Dr. Priebe's testimony illustrate this point.

> *Q*. So this [case] falls within your own self-definition of what the standard of care and breach would be in such a case; is that correct?
>
> *A*. Correct.
>
> *Q*. You cannot cite to any medical literature whatsoever that supports that opinion, true?
>
> *A*. Medical literature doesn't discuss standard of care.
>
> *Q*. So is that true, sir?
>
> *A*. It's true. But medical literature does not discuss standard of care.

---

[1] The majority provides an exhaustive review of the law in this area.  I do not necessarily take issue with the majority's general recitation of the law; rather, I disagree with its application of that law to this case and its ultimate conclusion that the trial court abused its discretion in excluding Dr. Priebe's testimony.

*Q*. Well, you know, there are a host of colleagues of yours, national and local, who would disagree with you in terms of the only caveats being a breach of the standard of care being extensive scarring or inflammation; isn't that correct?

*A*. They're entitled to their opinion. In my opinion, that is a breach of the standard of care and malpractice.

\*\*\*

*Q*. Can you cite to one current general surgery colleague at Case Western University who agrees with your position, to your knowledge, than other than these caveats of extensive scarring or inflammation, it is always a breach of the standard of care to cause injury to the common bile duct during a laparoscopic cholecystectomy?

*A*. I've never discussed this with any of them. I have no idea what their opinions are.

\*\*\*

*Q*. And as it relates to that opinion, you cannot cite to a shred of medical literature, a medical authority, to support that opinion other than your own belief system, true?

*A*. There is no authority that exists to do that, so that's true. But there is no authority that does that. So the answer is true.

\*\*\*

*Q*. Do you know whether . . . any of your other colleagues in the Case Western system agree with that position?

*A*. I've never discussed it with them. I wouldn't know.

*Q*. Can you cite to one colleague in the general surgery field, a board certified general surgeon, who agrees with your position that the only caveats to injury to the common bile duct with laparoscopic cholecystectomy would be extensive scarring or inflammation?

*A*. I wouldn't know. I've never asked any of my other surgical colleagues, so I would have no idea what their opinion is.

In other words, apart from his own personal views on what should be required of a reasonable surgeon, Dr. Priebe offered absolutely no basis for his asserted knowledge of the standard of care, or, relatedly, his opinion that there was a breach thereof in this case. Cf. *Edry*, 486 Mich at 640-642. To subscribe a breach of the standard of care based on one doctor's personal opinion of that standard runs afoul, however, of the notion that the standard of care is dictated by community standards, not based on how a particular health care professional would

act.  See *Wiley v Henry Ford Cottage Hosp*, 257 Mich App 488, 493; 668 NW2d 402 (2003).  See also *Cox*, 467 Mich at 17 n 17 ("[T]he standard of care for both general practitioners and specialists refers to *the community.*" (emphasis added)).  Indeed, it may well be that Dr. Priebe holds himself to a higher, or different, standard than that practiced by the medical community at large.  See *Locke v Pachtman*, 446 Mich 216, 229; 521 NW2d 786 (1994); *id.* at 235 (LEVIN, J., dissenting).

Further, while Dr. Priebe's credentials may be impressive, it is well-recognized that "it is generally not sufficient to simply point to an expert's experience and background to argue that the expert's opinion is reliable and, therefore, admissible."  *Edry*, 486 Mich at 642.  In other words, Dr. Priebe's experience on its own—without supporting literature or corroborating authority of any kind—does not equip him to opine in a court of law that Dr. Misra committed malpractice.  See *id.* at 640 ("[A] lack of supporting literature is an important factor in determining the admissibility of expert witness testimony.").[2]  Absent some support, the underlying principle on which his opinion rests—the assertion that clipping the common bile duct is not a known risk of the surgery but malpractice in every instance where there is not scarring or inflammation—is simply supposition based on his own personal views, and his opinion therefore lacks the reliability required to merit admission.  See MRE 702; MCL 600.2955.

On the unique facts of this case, given the unabashedly personal nature of Dr. Priebe's opinions as expressed at his deposition, I do not believe the trial court abused its discretion in excluding his testimony as unreliable and I would, therefore, affirm the trial court's grant of summary disposition.


/s/ Joel P. Hoekstra

---

[2] On appeal, plaintiff for the first time attempts to support Dr. Priebe's position with medical literature.  To the extent that this belated effort involves the presentation of new materials, it is an improper expansion of the record, meaning that, as the majority recognizes, these materials should not be considered.  See *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 56; 649 NW2d 783 (2002); MCR 7.210(A).  And, even accepting for the sake of argument that these materials support Dr. Priebe's viewpoint—there is no indication that they informed the opinion he provided in the lower court.  Cf. *Edry*, 486 Mich at 641 ("[The] plaintiff never provided an affidavit explaining how [the expert witness] used the information from the websites to formulate his opinion or whether [he] ever even reviewed the articles.").  Likewise, while the majority characterizes Dr. Priebe's opinion as consistent with the surgical "purists" referenced in the Fischer and Way articles offered by defendants, there is no indication that these articles, or the thinking of other "purists," in any way informed Dr. Priebe's opinion.  The fact thus remains that Dr. Priebe offered his opinion without underlying support.