*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF ALI R. RIAHI, by MOHAMMED
RIAHI, Personal Representative,

UNPUBLISHED
September 10, 2020

Plaintiff-Appellant,

v

No. 346525
Kent Circuit Court
LC No. 18-002159-NO

HOPE NETWORK,

Defendant-Appellee.

Before: REDFORD, P.J., and BECKERING and M. J. KELLY, JJ.

PER CURIAM.

In this wrongful-death action, plaintiff appeals as of right the order granting defendant, Hope Network, summary disposition under MCR 2.116(C)(10). For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

Plaintiff, as a personal representative of the estate of his son, Ali Riahi, filed this wrongful-death action against Hope Network pursuant to Michigan's wrongful-death statute, MCL 600.2922. Plaintiff alleged that since 2009, Riahi was living in an adult foster-care home operated by Hope Network. Prior to being assigned to the Hope Network home, Riahi had been diagnosed with a seizure disorder, which, according to the complaint, was believed to be due to hyponatremia (low sodium in the blood). Between Friday, February 24, 2017 and Monday, February 27, 2017, Riahi exhibited flu-like symptoms, including episodes of diarrhea and vomiting. He was treated with a specialized diet and given Imodium for his diarrhea. Additionally, a staff member contacted a physician for Riahi on Friday evening and Sunday morning to relay Riahi's symptoms. The staff member explained that because of the diarrhea and vomiting, she had concerns that Riahi might become dehydrated. The physician recommended that staff continue Riahi's specialized diet and encourage him to drink water. Thereafter, on Monday, February 27, 2017, at approximately 7:30 a.m., Riahi experienced labored breathing. Hope Network staff called 911 to have him transported to the hospital. Riahi was unresponsive, however, when the fire department personnel arrived. An EKG indicated that Riahi had suffered a cardiac arrest. Although measures were taken to

-1-

resuscitate him, they were unsuccessful and he was pronounced dead. Based on the record before this Court, it does not appear that an autopsy was performed on Riahi.

In his complaint, plaintiff alleged that Riahi's cardiac arrest was "caused by Hypovolemic shock which had caused his organs to shut down." He asserted that Hope Network was the proximate cause of Riahi's death because its agents negligently failed to have Riahi transported by ambulance to the hospital emergency department, "where he required and would have received electrolyte replacement by IV to restore fluids and prevent hypovolemic shock, and death."

Hope Network moved for summary disposition under MCR 2.116(C)(10), alleging that plaintiff's theories of causation were not supported by facts or evidence. Hope Network submitted affidavits from two experts, both of whom opined that Riahi was "more likely" to have suffered a "sudden cardiac event as a result of a genetic crossover between those genes which are associated with his schizophrenic condition, and those which relate to sudden cardiac events." In response, plaintiff asserted that the cause of Riahi's death was a "classic question for the jury," directing the court to testimony from his expert witness, Dr. Michael App, who noted that during the last weekend of his life, Riahi experienced a number of episodes of diarrhea and vomiting, which resulted in severe dehydration. Dr. App suspected that the metabolic imbalance associated with severe dehydration was likely the cause of Riahi's death.

Following oral arguments, the trial court granted Hope Network's motion for summary disposition, concluding that plaintiff's expert's testimony that he suspected Riahi's death was likely caused by dehydration or a metabolic imbalance was based on "hindsight, speculation, and one weekend's worth of limited records." The court also determined that there was no indication that Dr. App's opinion was based on sufficient facts or data, or that it is of the product of reliable principles and methods to be admissible MRE 702.

This appeal follows.

## II. SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

Plaintiff argues that the trial court erroneously ignored Dr. App's expert testimony regarding causation, and thus erred by granting summary disposition to Hope Network. This Court reviews de novo a trial court's ruling on a motion for summary disposition. *Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013). "In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Id*. (quotaiton marks and citation omitted). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*. at 139-140 (quotation marks and citation omitted).

### B. ANALYSIS

Relevant to this appeal, in order to prevail on his wrongful death claim, plaintiff must show that Hope Network's negligence was a proximate cause of the plaintiff's injuries. See *Skinner v*

*Square D Co*, 445 Mich 153, 162-163; 516 NW2d 475 (1994). Proximate causation is comprised of two distinct elements: (1) cause in fact, and (2) legal causation. *Craig ex rel Craig v Oakwood Hosp*, 471 Mich 67, 86-87; 684 NW2d 296 (2004). "The cause in fact element generally requires showing that 'but for' the defendant's actions, the plaintiff's injury would not have occurred." *Skinner*, 445 Mich at 163.

When responding to a motion for summary disposition, a party bearing the burden of proving causation must "set forth specific facts that would support a reasonable inference of a logical sequence of cause and effect." *Id*. at 174. Causation may be shown circumstantially, but "[t]o be adequate, a [party's] circumstantial proof must facilitate reasonable inferences of causation, not mere speculation." *Id*. at 164. "[T]he evidence need not negate all other possible causes," but "this Court has consistently required that the evidence exclude other reasonable hypotheses with a fair amount of certainty." *Craig*, 471 Mich at 87-88 (quotation marks and citation omitted). "Our case law requires more than a mere possibility or a plausible explanation." *Id*. at 87.

Here, Dr. App reviewed the progress notes of Hope Network's agents from the weekend before Riahi's death and familiarized himself with the fact that Riahi had an indwelling catheter, which prevented his body from reabsorbing liquids if he became dehydrated. Dr. App also spoke with Riahi's father, who reported that during a telephone conversation with Riahi that weekend Riahi had stated he was thirsty. When asked his opinion as to how Riahi died, Dr. App testified

> My *suspicion* is with ongoing gastrointestinal losses, diarrhea and throwing up, he *was likely losing* a lot of bicarbonate buffer that keeps the body system in neutrality, and with the critical loss of bicarbonate, he started to become more acidotic, moving into a metabolic acidosis; from there, [he] *likely* began to start to increase his respiratory rate to try to compensate for acidosis, to try to, in effect, breathe it out. But my *suspicion* then is that he reached the edge in terms of low-volume state, and he wasn't able to keep up with the respiratory rate with the circulating volume he had left. [Emphasis added.]

Even viewing Dr. App's testimony in the light most favorable to plaintiff, his testimony amounts to nothing more than speculation. He suspects that Riahi was severely dehydrated because the progress notes indicate that Riahi had episodes of vomiting and diarrhea through the weekend before his death. He also relies on a statement from a lay witness that, because of Riahi's vomiting and diarrhea, she had concerns that he might become dehydrated. Dr. App also mentioned some things that Hope Network's agents could have looked for in Riahi's appearance that would have demonstrated dehydration, such as a fatigued, tired, or gaunt appearance, or signs that would have been visible in his mucus membranes, eyes, and mouth. Yet, Dr. App affirmed that he did not have any facts in knowledge regarding how Riahi looked during the weekend preceding his death. Further, Dr. App was unaware how many episodes of diarrhea Riahi experienced, which would have a bearing on whether the diarrhea would cause dehydration. It is axiomatic that not every episode of diarrhea leads to severe dehydration.

Dr. App also acknowledged that there was no objective laboratory testing available to support his theory that Riahi was severely dehydrated, and he had no articles or medical literature to support his opinions. He also admitted to being unaware of any medications Riahi was taking

or his diagnosis of hyperlipidemia and schizophrenia. Dr. App opined that Riahi should have been transferred to the hospital "no later than" the evening before his death, because he "was obviously clearly reaching a critical point, and so fluid replacement potentially even a few hours before" his death could have saved his life. Dr. App was asked what made him think that Riahi was to the point of needing more aggressive care; he responded that "in the absence of being unable to see him, my *suspicion* is just his level of activity." (Emphasis added). Expert testimony must be supported by facts in evidence, and while the evidence need not negate all other possible causes, the causation evidence must exclude other reasonable hypotheses with a fair amount of certainty." *Skinner*, 445 Mich at 166. Here, Dr. App's testimony does not exclude other reasonable hypotheses with a fair amount of certainty. Instead, it amounts to "a mere possibility or a plausible explanation," which is insufficient to establish causation. See *Craig*, 471 Mich at 87-88. Just because dehydration can result from vomiting and diarrhea does not mean that it did so in this case. See *Wiley v Henry Ford Cottage Hosp* , 257 Mich App 488, 496; 668 NW2d 402 (2003) ("An explanation that is consistent with known facts but not deducible from them is impermissible conjecture."). On this record, like Dr. App, the fact-finder can only guess that there is a cause and effect relationship between Riahi's diarrhea and vomiting and his death. Because "[w]e cannot permit the jury to guess," *Skinner*, 445 Mich at 166 (quotation marks and citation omitted), summary disposition was warranted.[1]

Affirmed. Hope Network may tax costs under MCR 7.219(A).

/s/ James Robert Redford
/s/ Jane M. Beckering
/s/ Michael J. Kelly

---

[1] We note that in its motion for summary disposition, Hope Network presented testimony from two expert witnesses, both of whom concluded that Riahi's death was related to his diagnosis as a schizophrenic individual. However, like plaintiff's expert's testimony, their testimony merely notes an existing fact—i.e. that Riahi was diagnosed with schizophrenia—and then concludes that some people with that condition die under circumstances similar to how Riahi died. Without more, their testimony is speculative, notwithstanding that they appended scholarly articles to their affidavits.