# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
August 23, 2018

Plaintiff-Appellee,

v

No. 339471
Ingham Circuit Court
LC No. 16-000622-FC

RORY ANTION EDMONDS,

Defendant-Appellant.

Before: MURPHY, P.J., and GLEICHER and LETICA, JJ.

PER CURIAM.

Defendant was convicted by a jury of first-degree criminal sexual conduct (CSC-I), MCL 750.520b (multiple variables), unlawful imprisonment, MCL 750.349b, and assault by strangulation, MCL 750.84(1)(b). The trial court sentenced defendant to concurrent prison terms of 285 to 450 months for the CSC-I conviction, 8 to 15 years for the unlawful imprisonment conviction, and 6 to 10 years for the assault conviction. Defendant appeals as of right, and we affirm.

The female victim had been in a brief dating relationship with defendant when he attacked her in his home. The brutal assault included defendant tying the victim up with a dog leash and belt, taking her phone and physically preventing her from leaving, taping her mouth closed, hitting the victim in the head, choking her until she passed out for a period of time, threatening her by placing a knife to her neck, holding a hot iron next to her face, and raping her. Although the victim testified against defendant at his preliminary examination, she could not be located for trial, and her preliminary examination testimony was presented to the jury. The prosecution also elicited testimony from persons who encountered the victim after the assault, including police and medical personnel who testified about the victim's visible injuries and her account of the assault, which were consistent with the victim's claims made at the preliminary examination.

Defendant first argues that he was denied his constitutional right of confrontation when the trial court allowed the admission of the victim's testimony given at the preliminary examination. He contends that the trial court erred in declaring that the victim was unavailable, maintaining that the state did not exercise due diligence in attempting to secure the victim's presence at trial, where the police did not check with the Department of Health and Human

Services (DHHS), domestic violence shelters, CARE, "mail service," the county jail, or probation services.

Under the United States Constitution, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" US Const, Am VI. Similarly, under the Michigan Constitution, "[i]n every criminal prosecution, the accused shall have the right . . . to be confronted with the witnesses against him or her[.]" Const 1963, art 1, § 20. The Confrontation Clause bars the admission of testimonial statements unless the declarant was unavailable to testify at trial and the defendant had a prior opportunity for cross-examination. *Crawford v Washington*, 541 US 36, 68; 124 S Ct 1354; 158 L Ed 2d 177 (2004); *People v Chambers*, 277 Mich App 1, 10; 742 NW2d 610 (2007).[1] Preliminary examination testimony is, of course, testimonial in nature. *Crawford*, 541 US at 68. Defendant had the opportunity to and did cross examine the victim at the preliminary examination. Accordingly, in order for the victim's preliminary examination testimony to have been admissible at trial, she had to be declared "unavailable." *People v Garland*, 286 Mich App 1, 7; 777 NW2d 732 (2009) ("Former testimony is admissible at trial under . . . the Confrontation Clause as long as the witness is unavailable for trial and was subject to cross-examination during the prior testimony.").

In *People v Bean*, 457 Mich 677, 684; 580 NW2d 390 (1998), our Supreme Court expressed:

> The test for whether a witness is "unavailable" . . . is that the prosecution must have made a diligent good-faith effort in its attempt to locate a witness for trial. The test is one of reasonableness and depends on the facts and circumstances of each case, i.e., whether diligent good-faith efforts were made to procure the testimony, not whether more stringent efforts would have produced it. The trial court's determination will not be disturbed on appeal unless a clear abuse of discretion is shown. [Citations omitted; see also MRE 804(a)(5) (requiring, for purposes of hearsay analysis, due diligence to procure a declarant's attendance and testimony in a criminal case before finding declarant unavailable).]

At the beginning of the trial, the prosecution asserted that despite due diligence and good-faith efforts, the victim could not be produced. A detective with the Lansing Police Department (LPD) testified that he had made several unsuccessful attempts to contact the victim by phone. His last contact with her was the first week of April, about a month before trial. He indicated that up until April he had regular contact with her and that if he could not immediately reach her by phone when he called, she would return his calls within a couple of days or so. The detective went to the victim's mother's home, which was the victim's last known address. However, the victim's mother had not had any recent contact with her, nor did she know of her whereabouts. The detective tried another previously known address, along with the victim's brother's last

---

[1] The Confrontation Clause of the Sixth Amendment is applicable to the states via the Due Process Clause of the Fourteenth Amendment. *Tennessee v Lane*, 541 US 509, 523; 124 S Ct 1978; 158 L Ed 2d 820 (2004).

known address, both without success. He left subpoenas for the victim at her mother's home and her previous address. The detective unsuccessfully inquired about the victim at some hospitals in the area and the University of Michigan Hospital. The detective circulated her photo to the LPD for assistance, and he checked, without luck, the "VI-LINK" website, which publishes information about individuals who are incarcerated. The victim's witness coordinator confirmed that she had last had contact with the victim about six weeks earlier. The coordinator stated that her office would have sent notifications to the last known address. She indicated that she left the victim various voicemails that went unreturned. The trial court determined that the prosecution made good-faith efforts to locate the victim and exercised due diligence.

On the facts and circumstances of this case, we cannot conclude that the trial court abused its discretion in determining that the prosecution made reasonable, good-faith efforts to procure the victim's attendance at trial. With respect to the various entities identified by defendant as not having been checked or visited by authorities, it does appear that the victim had a probation officer at one time, and when the detective was asked whether he had spoken to the victim's "PO," the detective stated that he had not done so, but it was his "understanding that she was not reporting." Additionally, the detective did testify that shortly after the assault took place, he had escorted the victim to CARE, a domestic violence agency, but the detective further noted that he was "not aware of any other contact that's she had with that office." When asked by defense counsel whether he checked with the Shiawassee county jail, the detective indicated that he checked "VI-LINK, and that covers the State of Michigan," so evidently the victim was not incarcerated. Moreover, the test is one of reasonableness, "not whether more stringent efforts would have produced" the witness. *Bean*, 457 Mich at 684. The trial court did not err in declaring that the victim was "unavailable" for purposes of the Confrontation Clause. Accordingly, the court did not err in admitting the victim's preliminary examination testimony at trial.

Defendant next argues that he was denied a fair and impartial trial where the trial court was harsh and belittling toward defense counsel, piercing the veil of judicial impartiality, which bias was revealed at the close of trial, after the jury was excused, when the court accused counsel of possibly having prior knowledge that the victim would not be appearing at trial as a witness.

In *People v Biddles*, 316 Mich App 148, 151-152; 896 NW2d 461 (2016), this Court, relying primarily on *People v Stevens*, 498 Mich 162; 869 NW2d 233 (2015), addressed the subject of judicial misconduct:

> The question whether judicial misconduct denied defendant a fair trial is a question of constitutional law that this Court reviews de novo. A defendant must overcome a heavy presumption of judicial impartiality when claiming judicial bias. To determine whether the trial judge's conduct deprived defendant of a fair trial, we consider whether the trial judge's conduct pierced the veil of judicial impartiality. A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party. This is a fact-specific inquiry, and we must consider the cumulative effect of any errors. A single instance of misconduct generally does not result in the appearance that a

-3-

trial judge is biased, unless the instance is so egregious that it pierces the veil of impartiality. To evaluate the totality of the circumstances, we consider a variety of factors, including

> "the nature of the judicial conduct, the tone and demeanor of the trial judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions." [Citations, quotation marks, and alteration brackets omitted.]

"Judicial misconduct may come in myriad forms, including belittling of counsel, inappropriate questioning of witnesses, providing improper strategic advice to a particular side, biased commentary in front of the jury, or a variety of other inappropriate actions." *Stevens*, 498 Mich at 172-173.

Defendant first claims that the trial court belittled and improperly admonished defense counsel during his opening statement when the court declared, "You got to say what you are going to prove, not what you want to add in. You need to confine yourself to the evidence." We first note that a trial court is tasked with the duty "to control all proceedings during the trial, and to limit the introduction of evidence and the argument of counsel to relevant and material matters, with a view to the expeditious and effective ascertainment of the truth regarding the matters involved." MCL 768.29. Defendant fails to give context to the trial court's comment. Defense counsel started his opening statement by indicating that defendant's parents and sister were in the courtroom and that defendant's "parents are preachers and sister – ," at which point the prosecutor objected. The trial court asked defense counsel whether he would be providing any actual evidence regarding defendant's parents and sister, and counsel responded, "I don't intend to. It gives a little background as to who he is." At this juncture, the trial court uttered the above-quoted statement now being cited as evidencing judicial misconduct. We conclude that there was nothing inappropriate about the court directing defense counsel to confine his opening statement to the nature of the evidence that would be presented at trial. See *Wiley v Henry Ford Cottage Hosp*, 257 Mich App 488, 503; 668 NW2d 402 (2003) ("the purpose of an opening statement is to tell the jury what the advocate will attempt to prove").

Defendant also complains about a number of instances in which the trial court told defense counsel to "slow down," with the court becoming more and more exasperated when counsel failed to slow down. The record reveals that the court made the comments simply because counsel was speaking too fast and the court reporter transcribing the proceeding was apparently struggling to keep up.[2] The court's comments in this regard plainly did not reveal bias or partiality against defendant. Defendant finally cites the court's question directed to defense counsel, "Are you done?" Defense counsel was at the end of his opening statement when the court posed the question. We cannot tell from the record whether defense counsel paused or did something that might have triggered the question by the court, nor can we tell from the record the tone of voice used by the court in making the inquiry. Regardless, we cannot

---

[2] At one point, the court expressed to counsel that "Paul can't keep up with you."

conclude that such a simple little question, inoffensive on its face, pierced the veil of judicial impartiality.

The trial court had some harsh words for defense counsel after the trial ended and the jury was excused, which remarks are a bit troubling and may or may not have been deserved. Defendant cites these comments only for purposes of attempting to show that the trial court's intent in regard to the remarks that were made in front of the jurors was to belittle defense counsel. However, nothing stated earlier by the court was improper, and while the court may have expressed some negative thoughts about counsel outside the presence of the jury, the jurors heard nothing from the court that pierced the veil of judicial impartiality. Additionally, the trial court instructed the jury that the court's rulings, questions, and comments were not evidence, that the court was not attempting to express a personal opinion or to influence the jurors' vote in making remarks during the trial, that if the jurors believed that the court had an opinion about the outcome of the case, they were to ignore it, and that the jury was to decide the case solely on the basis of the evidence presented. These instructions serve as an additional basis to conclude, under the totality of the circumstances, that the trial court did not pierce the veil of judicial impartiality. *Stevens*, 498 Mich at 190. Reversal is unwarranted.

Next, defendant contends that he was denied a fair trial by virtue of having been observed in restraints by a prospective juror before trial. The right to a fair trial includes, absent extraordinary circumstances, the right to be free from shackles or handcuffs in the courtroom, but a defendant must show prejudice even if restraints were improperly employed, which cannot be established if the jury did not see the shackles. *People v Payne*, 285 Mich App 181, 186; 774 NW2d 714 (2009). On the second day of trial, after the lunch break, defense counsel informed the court as follows:

> Your Honor, my client was telling me I think the deputies told him yesterday morning when he was first coming in he thinks some of the jury pool *may have seen my client* come in as he was brought in yesterday morning. I found out about it a couple minutes ago. [Emphasis added.]

Defense counsel stated that it was unknown who might have seen defendant in restraints, if anyone. Defendant himself told the court that he "heard deputies talking about it this morning." The court asked the sheriff's deputy on duty whether he knew anything about the matter, and the deputy answered in the negative, explaining that he was "off" on the first day of trial. The court's law clerk then chimed in, stating, "The security guard caught the juror at the door downstairs . . . . They made the juror wait at security." The law clerk informed the trial court that he was only aware of one prospective juror. The trial court chided defendant for not bringing up the issue earlier, and the trial proceeded. Defendant did not ask the trial court to question the jurors on the matter, nor did defendant seek to have the court question relevant security personnel.

On this record, we can only speculate regarding whether defendant was actually seen in shackles or restraints before trial by any prospective juror and, if seen, whether the prospective juror or jurors ended up on the jury. Accordingly, defendant has not established a constitutional violation, nor has he demonstrated the requisite prejudice.

Defendant next contends that trial counsel was ineffective for failing to call defendant's son to testify, where the son was present during the alleged assault. According to defendant, defense counsel compounded the error by promising the jury during opening statements that it would hear the child's testimony, which never came to fruition, absent any explanation by counsel to the jurors. Whether counsel was ineffective presents a mixed question of fact and constitutional law, which we review, respectively, for clear error and de novo. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). In *People v Carbin,* 463 Mich 590, 599-600; 623 NW2d 884 (2001), our Supreme Court addressed the basic principles governing a claim of ineffective assistance of counsel, stating:

> To justify reversal under either the federal or state constitutions, a convicted defendant must satisfy the two-part test articulated by the United States Supreme Court in *Strickland v Washington,* 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). See *People v Pickens,* 446 Mich 298, 302-303; 521 NW2d 797 (1994). "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not performing as the 'counsel' guaranteed by the Sixth Amendment." *Strickland, supra* at 687. In so doing, the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. *Id.* at 690. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* at 687. To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim. See *People v Hoag,* 460 Mich 1, 6; 594 NW2d 57 (1999).

An attorney's performance is deficient if the representation falls below an objective standard of reasonableness. *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000). "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v Davis,* 250 Mich App 357, 368; 649 NW2d 94 (2002). We cannot insulate, however, the review of counsel's performance by simply calling it trial strategy. *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). Initially, this Court must determine whether strategic choices were made after less than complete investigation, with any choice being reasonable only to the extent that reasonable professional judgment supported the limitations on investigation. *Id.*; see also *People v Ackley*, 497 Mich 381, 389; 870 NW2d 858 (2015) (finding defense counsel performed deficiently by failing to investigate and attempt to secure an expert witness who could both testify in support of the defendant's theory and prepare counsel to counter the prosecution's theory of the case). The failure to present certain evidence or to call a witness constitutes ineffective assistance of counsel only if it deprives the defendant of a substantial defense. *People v Dunigan*, 299 Mich App 579, 589; 831 NW2d 243 (2013). A defense is substantial if it might have made a difference in the outcome of the trial. *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009).

Defendant contends that his son was an eyewitness who would have corroborated defendant's testimony that he did not commit the charged crimes. There is nothing in the record indicating why counsel did not call the child to testify or what the nature of the child's testimony would have been had he taken the stand.[3] Moreover, defendant testified that his son was not present during the timeframe in which the alleged assault took place, which is also consistent with the victim's testimony at the preliminary examination.[4] Indeed, the strangulation, the CSC-I, and the unlawful imprisonment had been established before the child returned to the home. Defendant fails to overcome the strong presumption that counsel's decision not to call the child as a witness, or not to ask for a temporary adjournment so as to be able to overcome any claimed logistical obstacle and then place the child on the stand, constituted sound trial strategy. Neither deficient performance nor prejudice has been established by defendant. And in regard to defense counsel's opening statement, there is nothing in the record suggesting that at the time of the opening statement, counsel knew that the child would or might not be taking the stand or that there was no plan or intent to call the child to testify, such that counsel's performance was deficient in promising his testimony. With respect to the opening statement, neither deficient performance nor prejudice has been demonstrated. Defendant was not deprived of a substantial defense.

In his Standard 4 brief, defendant claims that counsel was also ineffective for failing to call his son's babysitter to testify. Defendant suggests that the babysitter would have testified that she saw the victim walking around smoking cigarettes while the babysitter talked to defendant at the door during the same timeframe that the alleged attack took place.[5] However, neither the victim nor defendant testified that the babysitter was present during any of the events in question, and there is nothing in the record indicating how the babysitter would have testified had she been called as a witness. And we can only speculate as to why she was not called to testify. Defendant was not deprived of a substantial defense.

---

[3] In defendant's Standard 4 brief, where he repeats this ineffective assistance claim, defendant maintains that counsel had planned to have the child testify on a certain date, that transportation was coordinated to get the child to court on that date, that the trial court decided to wrap up the case earlier than envisioned, that it was impossible to get the child to court on the shortened notice, and that the child would have testified that he observed the victim get out of bed and use the bathroom at a point when the victim claimed to have been bound and gagged. None of these claims are supported by the record, and defendant acknowledges that these various assertions are based on communications made off the record.

[4] We note that in relation to the Standard 4 claims made in the preceding footnote, the victim testified that when defendant's son returned home, the victim was in bed without a mouth gag and tied up under a blanket, so the child did not see that she was bound, and then the victim was able to untie herself before leaving the bed.

[5] Defendant's brief refers to an attached affidavit from the babysitter; however, no affidavit is attached.

Defendant also argues in his Standard 4 brief that counsel was unprepared for trial, as evidenced by his apparent confusion at trial when the prosecution impeached defendant with a transcript of defendant's videotaped interview with investigators. Defendant contends that counsel should have obtained a transcript of the interview. However, defense counsel had been provided a videotape of the interview. And defendant fails to explain how he was prejudiced by the fact that counsel had not obtained a transcript of the videotape to go along with the videotape itself. "When asserting ineffective assistance of counsel premised on counsel's unpreparedness, a defendant must demonstrate prejudice resulting from the lack of preparation." *People v Bosca*, 310 Mich App 1, 37; 871 NW2d 307 (2015). Reversal is unwarranted.[6]

Affirmed.

/s/ William B. Murphy
/s/ Elizabeth L. Gleicher
/s/ Anica Letica

---

[6] We also reject defendant's request to remand the case for a hearing under *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973), as he has not established the need to do so.