*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROSALIND RUSSELL,

        Plaintiff-Appellant,

and

CLARENCE NASH,

        Plaintiff,

v

EAR NOSE & THROAT CONSULTANTS,
PROVIDENCE PARK HOSPITAL, and DR.
MICHAEL STONE,

        Defendants-Appellees,

and

ASCENSION HEALTH and ST JOHN
PROVIDENCE,

        Defendants.

UNPUBLISHED
October 27, 2022

No. 358642
Oakland Circuit Court
LC No. 2017-162679-NH

Before: LETICA, P.J., and SERVITTO and HOOD, JJ.

PER CURIAM.

-1-

Rosalind Russell ("plaintiff") appeals as of right the trial court's order granting summary disposition in favor of Ear, Nose & Throat Consultants ("ENT") and Dr. Michael Stone.[1] We affirm.

This is the second time this case is before us. Relevant background facts are set forth in this Court's prior opinion as follows:

> Dr. Stone treated Russell for a multinodular goiter. According to Russell, Dr. Stone recommended removing the mass on the right side of her thyroid along with a piece of the thyroid, but did not mention a mass on the left side and did not recommend removing the entire gland. Russell stated that her understanding was that Dr. Stone would remove only a part of the thyroid, and she made it clear before surgery that she did not consent to a total thyroidectomy. Russell alleged that, after the total thyroidectomy, she suffered severe health consequences. Relevant to this appeal, Russell's lawyer filed a complaint in December 2017, alleging medical negligence against Dr. Stone and vicarious liability against ENT.

> In September 2018, the trial court granted a motion to withdraw filed by Russell's lawyer and gave Russell 30 days to obtain new a lawyer. Eventually Russell filed a pro se motion seeking reconsideration of the order granting the motion to withdraw, but the court denied it as both untimely and lacking merit. Thereafter, Dr. Stone and ENT served requests for admissions and accompanying interrogatories on Russell. Russell responded pro se, and the court determined that her responses were denials, not admissions. These answers were timely served, but Russell did not sign the document. Relevant to this appeal, Dr. Stone and ENT's filed a motion to deem the requests for admissions admitted because Russell's answers did not comply with the court rules. Following a hearing that Russell did not attend, the court granted the motion.

> Thereafter, Dr. Stone and ENT filed a motion for summary disposition, arguing that Russell could not maintain her case against them given her now deemed admissions. Relevant to this appeal, the court granted Dr. Stone and ENT's motion and awarded them $4,010 in taxable costs. [*Russell v Ear Nose & Throat Consultants*, unpublished opinion of the Court of Appeals, issued April 30, 2020 (Docket No. 347560).][2]

---

[1] Prior to resolution of the summary disposition motion at issue, the parties stipulated to the dismissal of St. John Providence and Ascension Health, plaintiff's damages claim for lost earnings and/or lost earning capacity, and plaintiff's claim of active or independent negligence on the part of ENT.

[2] We note as further background facts that the prior to the trial court's first summary disposition decision and our April 30, 2020 opinion addressing that decision, the trial court entered orders: (1) precluding plaintiff from presenting or admitting any evidence or testimony in any fashion from any expert witness not produced by December 19, 2018 "in any further proceedings in this matter,

In this Court's prior opinion, we made several rulings:

. . . that the trial court abused its discretion when it implicitly struck Russell's response under MCR 2.302(G) or MCR 1.109(E), thereby allowing it to deem admitted the requests for admission under MCR 2.312(C).[]

Moreover, because the trial court erred by deeming Russell to have admitted that Dr. Stone complied with the standard of care and did not proximately cause her injuries, the court also erred in concluding from those deemed admissions that Dr. Stone and ENT were entitled to summary disposition. [*Id*. at p 2–3]

We further held that although plaintiff contended that the trial court erred in allowing her lawyer to withdraw, the argument was raised for the first time on reconsideration and was thus not preserved for review. *Id*. at p 3. We found that the same held true with respect to plaintiff's arguments that her former lawyer and the lawyer for Dr. Stone and ENT colluded against her, that the court's decision to grant summary disposition to Dr. Stone and ENT deprived her of her constitutional right to a jury trial and that she was denied her constitutional right to equal protection. We stated, "Yet, with regard to all of the above claims, Russell failed to raise the challenges during the lower court proceedings. Accordingly, we conclude that she has waived review of each issue." *Id*. We ultimately held:

For the reasons stated in this opinion, we reverse the court's order deeming the requests for admission admitted and remand to the trial court with instructions to provide Russell an adequate opportunity to sign her answers in accord with MCR 2.302(G)(2) and MCR 1.109(E)(3). Further, we vacate the order granting Dr. Stone and ENT summary disposition because that decision relied on the admissions that were improperly deemed admitted. Finally, we vacate the order awarding Dr. Stone and ENT taxable costs under MCR 2.625 as they are no longer the prevailing parties. [*Id*. at p 4]

We also noted that the trial court had granted summary disposition in favor of Providence Park Hospital, but that plaintiff did not challenge that ruling on appeal. *Id*. at p 1 n1.

After our remand, ENT and Dr. Stone ("defendants")[3] moved for summary disposition pursuant to MCR 2.116(C)(10). Defendants noted that while this Court remanded the matter back to the trial court to give plaintiff an opportunity to sign her responses to defendants' request for

_____

including trial," (2) precluding plaintiff from producing or otherwise using or relying on any evidence or documents sought in defendant's third request for production no.'s 2-8 at the time of trial and (3) granting defendants request to deem admitted requests for admission directed to plaintiff.

[3] On September 11, 2020, defendants filed a notice of the death of defendant Stone. However, we continue to use the term "defendants" throughout the opinion for purposes of continuity.

admissions, it did not address whether plaintiff could meet her burden of proof even if the responses to were signed. Defendants contended that plaintiff cannot produce the required expert testimony to establish the applicable standard of care, a breach of that standard of care, and causation because plaintiff produced one expert, Dr. Morris, and his deposition testimony reveals that plaintiff cannot meet her evidentiary burdens. The trial court agreed and granted defendants' motion for summary disposition. This appeal followed.

## I. CONSTITUTIONAL ISSUES

On appeal, plaintiff first raises unpreserved constitutional issues. We review unpreserved claims of constitutional error for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999). However, this Court may overlook preservation requirements in civil cases "if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006). We find no need to address, in-depth, the unpreserved constitutional issues presented by plaintiff on appeal.

Plaintiff first claims that although she has the right to a trial under Article I, § 14 of the Michigan Constitution, she was not allowed, as a pro per plaintiff, to pursue her claims to trial because she was financially unable to do so, thereby violating her right to the equal protection of the laws (based on her income level) set forth in Article I, § 2 of the Michigan Constitution. Plaintiff sets forth no law whatsoever in support of her claim on this issue and very few facts. As such, we may deem the issue waived. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give issues cursory treatment with little or no citation of supporting authority." *Houghton ex rel Johnson v Keller*, 256 Mich App 336, 339; 662 NW2d 854 (2003) (citations omitted). "A party waives an issue when it gives the issue cursory treatment on appeal." *Badiee v Brighton Area Schs*, 265 Mich App 343, 359–360; 695 NW2d 521 (2005), citing *Blazer Foods, Inc v Restaurant Properties*, *Inc*, 259 Mich App 241, 252; 673 NW2d 805 (2003).

Briefly addressing the issue in any event, our state constitution declares that "[n]o person shall be denied the equal protection of the laws; nor shall any person be denied the enjoyment of his civil or political rights or be discriminated against in the exercise thereof because of religion, race, color or national origin. "Const 1963, art 1, § 2. However, "the Michigan Constitution, like the United States Constitution, only protects individuals from discriminatory 'state action.'" *Scalise v Boy Scouts of America*, 265 Mich App 1, 20; 692 NW2d 858 (2005), citing *Woodland v Michigan Citizens Lobby*, 423 Mich 188, 205; 378 NW2d 337 (1985).

The judicial determination that no questions of material fact exist upon which the plaintiff could proceed to trial is not a "discriminatory state action." Nowhere in the trial court's opinion and order granting summary disposition is any reference made to religion, race, color or national origin, and nowhere is it implied. And while plaintiff asserts that she was treated differently/discriminated against (i.e., not permitted to proceed to a jury trial) on the basis of her financial status, not only has she not supported her claimed financial status with documentary evidence, she has failed to establish that the trial court's summary disposition ruling was in any way based on or influenced by her alleged financial status.

-4-

Moreover, even if we were to somehow assume that Const 1963, art 1, § 2 applied to the judicial determination that summary disposition was appropriate in defendants' favor pursuant to MCR 2.116(C)(10), plaintiff would have an obligation to show that the determination was based on certain innate characteristics that did not justify disparate treatment, was not rationally related to a legitimate governmental purpose, or was not substantially related to an important governmental objective. See *Crego v Coleman*, 463 Mich 248, 258-260; 615 NW2d 218 (2000) (explaining the levels of review applicable to a viable equal protection challenge). Plaintiff cannot do so here when the judicial determination was based on the specific characteristic of *her case* rather than on some characteristic of her, individually. Plaintiff's claim based on equal protection thus has no merit.

Plaintiff also argues that the trial court's grant of summary disposition in defendants' favor violated the 7th Amendment of the United State Constitution. There are two primary reasons why this claim by plaintiff has no merit. First, plaintiff has provided no relevant law to support her claim and has thus waived review of this issue. See *Badiee*, 265 Mich App at 359–60 ("A party waives an issue when it gives the issue cursory treatment on appeal."). Second, the Seventh Amendment (US Const, Amend VII) does not confer a right to trial by jury in state-court civil cases. See, e.g., *Great Lakes Gas Transmission Ltd Partnership v Markel*, 226 Mich App 127, 132; 573 NW2d 61 (1997); *Anzaldua v Band*, 457 Mich 530, 543 n 11; 578 NW2d 306 (1998).

Plaintiff does mention Const. 1963, art. 1, § 14, which provides "The right of trial by jury shall remain, but shall be waived in all civil cases unless demanded by one of the parties in the manner prescribed by law." The right to a jury trial is applicable to medical malpractice claims. See e.g., *Wiley v Henry Ford Cottage Hosp*, 257 Mich App 488; 668 NW2d 402 (2003). However, although a jury determines the amount of damages, "it is the court's job to determine whether a plaintiff is legally entitled to the damages." *Prentis Family Foundation v Barbara Ann Karmanos Cancer Institute*, 266 Mich App 39, 55; 698 NW2d 900 (2005). Thus, if a court finds that a plaintiff is not legally entitled to damages or, more specifically, that there are no genuine issues of material fact, a party's request for a jury trial does not preclude the grant of a motion for summary disposition. "Summary disposition does not violate a party's right to a jury trial because that right extends only to cases in which there are genuine issues of fact for the jury." *Lowrey v LMPS & LMPJ, Inc*, 313 Mich App 500, 507; 885 NW2d 638 (2015), judgment rev'd in part, vacated in part on other grounds, 500 Mich 1 (2016).

Additionally, in a medical malpractice case, "the plaintiff bears the burden of proving: (1) the applicable standard of care, (2) breach of that standard by defendant, (3) injury, and (4) proximate causation between the alleged breach and the injury. Failure to prove any one of these elements is fatal." *Wiley*, 257 Mich App at 492 (citation omitted). And, "expert testimony is required in medical malpractice cases to establish the applicable standard of care and to demonstrate that the defendant somehow breached that standard." *Id*. at 494 (citations omitted). Here, the trial court found among other things that plaintiff did not provide evidence sufficient to establish proximate causation. Plaintiff does not claim that she did, in fact, establish proximate causation. Thus, plaintiff's claims of error based on constitutional issues fail.

## II. EVIDENTIARY ISSUES

Plaintiff next raises several unpreserved quasi-evidentiary issues. While preserved evidentiary rulings are reviewed for an abuse of discretion, *People v Unger*, 278 Mich App 210, 216; 749 NW2d 272 (2008), unpreserved issues are reviewed for plain error affecting substantial rights. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). To the extent these issues can be construed as leading to the trial court's ultimate grant of summary disposition in defendant's favor under MCR 2.116(C)(10):

> We review de novo a trial court's decision regarding a motion for summary disposition to determine if the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A motion for summary disposition made under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Id.* at 120, 597 N.W.2d 817. The Court considers all affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion. *Id.* MCR 2.116(G)(4) states:
>
> > A motion under subrule (C)(10) must specifically identify the issues as to which the moving party believes there is no genuine issue as to any material fact. When a motion under subrule (C)(10) is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, judgment, if appropriate, shall be entered against him or her. [*Bernardoni v City of Saginaw*, 499 Mich 470, 472–73; 886 NW2d 109 (2016)]

Plaintiff's first claims of error are that the trial court was incorrect in stating that plaintiff alleged Dr. Stone lied to her and erred "in asserting that appellant getting a 2nd and 3rd medical opinion was her consent to total thyroidectomy surgery." Plaintiff asserts that her seeking other opinions prior to surgery has no bearing on whether she understood or consented to a total thyroidectomy and that the trial court's statement that plaintiff understood the procedure of a total thyroidectomy based on her consultations with other doctors is untrue, and, more importantly, is not the same as plaintiff having consented to that surgery.

First, the trial court did not state that plaintiff alleged Dr. Stone lied to her. Instead, the trial court was accurately summarizing defendants' summary disposition arguments. In their motion, defendants indeed stated that "Ms. Russell claimed that Dr. Stone lied to her and performed a total thyroidectomy without her consent." Defendants also attached to their motion a consent form signed by plaintiff for the procedure and the deposition testimony of plaintiff's expert, Dr. Morris. At Dr. Morris's deposition, opposing counsel asked to see Dr. Morris's binder of records. The following exchange thereafter took place:

Q:     I don't know if you can see this from where you are, Doctor Morris, but in one of your sets of records, there are some records of Doctor Stone, and they

appear to have handwriting on them that looks like it was written by somebody else. Do you know the genesis of these handwritten comments?

A:    No.

\*\*\*

Q:    And I'm not sure myself. Okay. There's a note on one of the records, this doctor has lied from the beginning, on November 5, 2015. Do you know what the genesis of that comment is?

A:    No.

Q:    It's not yours is it?

A:    No.

The record containing the handwritten note was included within documents that Dr. Morris had reviewed and he indicated that he did not make the handwritten notation. Defendants apparently concluded that plaintiff had made the handwritten notation, given that plaintiff is the one asserting fault on the part of Dr. Stone. Whether plaintiff actually made the notation or not, however, is irrelevant because plaintiff's claim is that the *trial court* set forth in its opinion and order that she claimed Dr. Stone lied to her and she "has no idea" where the trial court "obtained that inaccurate information." As indicated, the trial court was simply accurately summarizing defendants' summary disposition arguments.

Next, plaintiff asserts that the following, stated in the trial court's August 19, 2021 opinion and order, represents the trial court's improper reliance on her obtaining additional medical opinions when it granted defendants' motion for summary disposition:

> Stone Defendants note that plaintiff's visit to Dr. Singer (without Dr. Stone's knowledge) is critical because it supports that plaintiff understood the procedure that Dr. Stone would be performing and [that she] consented to [was]the total thyroidectomy procedure in contrast to her allegation that Dr. Stone lied to her and performed a total thyroidectomy without her consent. (Stone Defendant's MSD *Exh. I* (noting that plaintiff "saw Dr. Stone at Providence who did a [fine needle aspiration]. This reportedly revealed "atypical cells." He recommended a total thyroidectomy. She present[s] for a second opinion. The patient denies a family history of cancer or history of exposure to ionizing radiation").

The above appears in the "Background" portion of the trial court's opinion and order and again, the trial court is simply acknowledging an argument that defendants presented in their motion for summary disposition. The trial court correctly stated that Exhibit I to defendant's motion for summary presented a medical document prepared by Dr. Singer wherein he reported:

> I had the pleasure of seeing Rosalind Russell in my office today. She is a 69 y.o. woman with a right sided thyroid nodule. This was found on a routine physical exam several weeks ago. The patient reports that there has been no growth recently

of the thyroid. There are no associated symptoms of compression. She saw Dr. Stone at Providence who did an FNA [fine needle aspiration]. This reportedly revealed "atypical cells". He recommended a total thyroidectomy. She present[s] for a second opinion. The patient denies a family history of thyroid cancer or a history of exposure to ionizing radiation.

Dr. Singer also noted that he discussed the possible nature of the nodule with plaintiff and he explained that if it was cancer that a total thyroidectomy would be appropriate, but if it was benign no additional intervention was needed. If a biopsy was indeterminate, it was possible that a diagnostic lobectomy should be performed. Dr. Singer noted that he had "a long discussion regarding the risks and benefits of a total versus hemi-thyroidectomy" with plaintiff.

There is no indication that the trial court found that plaintiff's consult with Dr. Singer represented her consent to a total thyroidectomy, as argued by plaintiff. In the analysis portion of its opinion and order, the trial court stated that defendants had set forth two specific arguments in their motion for summary disposition: plaintiff's expert testimony regarding proximate causation is entirely speculative and defendants' expert unequivocally testified that Dr. Stone provided the appropriate care. The trial court then stated that plaintiff failed to provide any documentary evidence setting forth specific facts that demonstrated a genuine issue for trial.

The only reference in the analysis concerning plaintiff's seeking a second opinion was the trial court's statement that "there is no genuine issue of material fact that plaintiff cannot meet her burden to establish the causation element because her expert's testimony as to the breach is too speculative and not supported given his failure to review plaintiff's entire medical records, which included her seeking a second opinion from another doctor." Plaintiff's expert, Dr. Morris, testified at deposition that in connection with plaintiff's case, he reviewed the case medical records and the deposition testimony of plaintiff and Dr. Stone and that all of the material he reviewed was contained in a binder he had with him. Dr. Morris testified that he did not review any imaging studies and did not examine or speak to plaintiff. Dr. Morris testified that when discussing the possibility of a thyroidectomy with a patient, the doctor would advise of the risks, including that the patient's voice may change. He acknowledged that Dr. Stone explained this to plaintiff. However, Dr. Morris also testified that he did not find in the records that plaintiff went to another physician to get a second opinion before she had her thyroid surgery.

The trial court's statement in the opinion and order that plaintiff's expert did not review all of plaintiff's medical records, one of which was a consult for a second opinion, was true and accurate. However, contrary to plaintiff's argument, the trial court did not find that plaintiff's obtaining a second opinion amounted to her consent to a total thyroidectomy. Instead, it found that the opinion of plaintiff's expert was too speculative *and* not supported because he had not reviewed all of plaintiff's medical records, one of which was another doctor's report that plaintiff told him Dr. Stone recommended a total thyroidectomy. The reference to the second opinion was provided as an indication that plaintiff's expert's opinion may have been based on incomplete information.

Plaintiff next contends that the trial court erred in allowing/reviewing a "forged" surgery consent form that defendants had never presented prior to their 2021 summary disposition motion. Plaintiff's claim that the consent form contained a forged signature was not raised until, after the

trial court granted summary disposition in defendants' favor, she filed an unsigned, unsworn affidavit stating that she had now "finally" read defendants' motion for summary disposition and the exhibit consisting of her consent form. Plaintiff stated in the affidavit she had not signed the consent form, never saw it before, and asserted the form was never witnessed or previously provided to the court. Putting aside the question of the validity of an unsigned, unsworn affidavit, the record evidence establishes that plaintiff did, in fact, sign the consent form.

Plaintiff was deposed on April 30, 2018. At her deposition, plaintiff testified that she asked Dr. Stone if he was going to remove just a portion of her thyroid gland and he said yes. She testified that she was on her way to the operating room and would not sign any papers until he assured her that he was not taking out her whole thyroid. During plaintiff's deposition, however, opposing counsel marked a two-page "consent for an operation" form and showed it to plaintiff. She agreed the form was signed at St. John Providence Hospital on June 29, 2015. Opposing counsel then asked if she signed the document and plaintiff responded "yes." Plaintiff acknowledged that it was her signature on the document and agreed that the document indicates that she consented in writing to a total thyroidectomy.

Plaintiff further testified that at the time she signed the document, she did not know what a total thyroidectomy was and that Dr. Stone never told her the risks of a total thyroidectomy. Plaintiff also testified, however, that she consulted with Dr. Singer for a second opinion and she told him that Dr. Stone had recommended a total thyroidectomy.

As can be seen above, plaintiff admitted at deposition that she signed the June 29, 2015 consent form for the total thyroidectomy. While she indicated that she did not know the risks of the procedure or even what the procedure was, she still signed the form allowing the procedure. The form specifically states that Dr. Stone was performing a total thyroidectomy. The form also contains, at paragraph 4, an agreement that the signing person is aware that "risks, consequences and complications may be associated with the procedure(s) to be undertaken," and a provision directly above plaintiff's signature as follows:

> I have had the opportunity to ask my physician questions about the operation listed above. I have been informed about the potential benefits, risks, and side effects regarding the above proposed operation, including the likelihood of me reaching my goals and potential problems that may occur during my recuperation.

"The law is clear that one who signs an agreement, in the absence of coercion, mistake, or fraud, is presumed to know the nature of the document and to understand its contents, even if he or she has not read the agreement." *Clark v DaimlerChrysler Corp*, 268 Mich App 138, 144–45; 706 NW2d 471 (2005). And, plaintiff cannot now present an affidavit contradicting her deposition testimony in order to create a material question of fact. "[P]arties may not contrive factual issues merely by asserting the contrary in an affidavit after having given damaging testimony in a deposition." *Dykes v William Beaumont Hosp*, 246 Mich App 471, 480; 633 NW2d 440 (2001). Where plaintiff admitted at her deposition that she signed the consent for surgery form, she cannot now present an affidavit to the contrary in an attempt to create a question of fact. Plaintiff's argument that the surgery consent form was forged and that the trial court thus erred in considering in when rendering its summary disposition decision necessarily fails.

Plaintiff next asserts that the trial court erred in failing to acknowledge defendants' admission that they made a "God" decision to perform a total thyroidectomy against plaintiff's wishes, consent, and will. As previously addressed, plaintiff admittedly signed the consent form for the performance of a total thyroidectomy. In addition, plaintiff has provided no law or argument suggesting that the trial court has an obligation to review all deposition testimony on its own when the same is not presented to it, and then take notice of what plaintiff asserts are admissions.

As our Supreme Court has stated:

. . . a mere statement without authority is insufficient to bring an issue before this Court. It is not sufficient for a party "simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959).[] Accordingly, we need not address this issue, and therefore, decline to do so.[] [*Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998)]

Moreover, the deposition testimony relied upon by plaintiff for her argument is not an admission.

Plaintiff directs this Court to a single deposition question posed to her expert, Dr. Morris, by opposing counsel and his answer to that single question:

Q: So the only standard of care issue in this case is Doctor Stone's decision to perform the total thyroidectomy?

A: Yes.

The questions preceding that question indicate that counsel was questioning Dr. Morris if he had any criticism of Dr. Stone's technical performance of the operation. Counsel asked, " . . .you can't here today provide an opinion that Doctor Stone's technical performance of this procedure was outside the standard of care, can you?" Dr. Morris responded, "No, not according to his record." Counsel thereafter asked the question relied upon by plaintiff. The question and answer were obviously meant to clarify *when* Dr. Morris believed Dr. Stone breached the standard of care (i.e., during the procedure itself or instead in his determination that the procedure was necessary). Plaintiff's argument that opposing counsel made an admission that Dr. Stone made a "God" decision to perform a total thyroidectomy therefore has, as with her other quasi-evidentiary claims of error, no merit.

III. COUNSEL'S WITHDRAWAL, COLLUSION, AND VIOLATION OF MRPC 1.16(b)(1)

Plaintiff asserts that the trial court erred in allowing her counsel to withdraw from the case, that counsel's withdrawal violated MRPC 1.16(b)(1), and that it appeared as though plaintiff's former counsel and opposing counsel were acting in collusion. We disagree.

A court's decision regarding an attorney's motion to withdraw is reviewed for abuse of discretion. *In re Withdrawal of Attorney*, 234 Mich App 421, 431; 594 NW2d 514 (1999). If the

trial court's decision falls within the range of reasonable and principled outcomes, the trial court has not abused its discretion. *Maldanado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). However, unpreserved issues are reviewed for plain error affecting substantial rights. *In re Utrera*, 281 Mich App at 8.

Notably, in our prior opinion in this matter, this Court held:

As explained by our Supreme Court in *Walters v Nadell*, 481 Mich 377, 387-388; 751 NW2d 431 (2008):

Michigan generally follow the "raise or waive" rule of appellate review. Under our jurisprudence, a litigant must preserve an issue for appellate review by raising it in the trial court. Although this Court has inherent power to review an issue not raised in the trial court to prevent a miscarriage of justice, generally a "failure to timely raise an issue waives review of that issue on appeal."[*Russell v Ear Nose & Throat Consultants*, unpublished opinion of the Court of Appeals, issued April 30, 2020 (Docket No. 347560), p *3]

We determined that plaintiff waived the issues concerning the trial court's allowing her counsel to withdraw and alleged collusion of her counsel and opposing counsel because she failed to raise them in the trial court. *Id*.

On remand to the trial court, plaintiff again failed to raise these issues in the trial court. We recognize that on September 4, 2020, defendants filed "Defendants' response to plaintiff's motion for court to overturn it's (sic) decision allowing [plaintiff's counsel] to withdraw." In the response, defendants indicate that plaintiff filed such motion on or about September 2, 2020. However, no such motion appears in the docketing statement or lower court records. Because plaintiff failed to raise these issues in the trial court, she has waived review of the issues. *Walters*, 481 Mich at 387-388. Moreover, she has not established that the withdrawal was improper or constituted plain error affecting her substantial rights. *In re Utrera*, 281 Mich App at 8.

As to the alleged violation of MRPC 1.16(b), that rule provides:

Except as stated in paragraph (c), after informing the client that the lawyer cannot do so without permission from the tribunal for the pending case, a lawyer may withdraw from representing a client if withdrawal can be accomplished without material adverse effect on the interests of the client, or if:

(1) the client persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent;

(2) the client has used the lawyer's services to perpetrate a crime or fraud;

(3) the client insists upon pursuing an objective that the lawyer considers repugnant or imprudent;

-11-

(4) the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled;

(5) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client; or

(6) other good cause for withdrawal exists.

Plaintiff claims that her counsel's withdrawal adversely affected plaintiff in every way, as she has had to represent herself and the trial court held her near the standards applicable to attorneys. This, according to plaintiff, prejudiced, discriminated against, and penalized her.

Plaintiff fails to recognize that the entirety of the sentence indicating that a lawyer may withdraw from representing a client if doing so can be accomplished "without material adverse effect on the interests of the client" is immediately followed by the phrase "*or* if . . . ." Plaintiff does not address the six specified circumstances that follow the "or if" provision. Having failed to present a thorough analysis of her argument or support for the same, we may deem this issue waived on appeal. *Badiee*, 265 Mich App at 359–60.

Finally, we find no merit to plaintiff's assertion that the trial court held her, a pro se litigant, to the standards of a practicing attorney and sanctioned her throughout the proceedings. Plaintiff relies upon *People v Herrera*, 204 Mich App 333, 339; 514 NW2d 543 (1994) for the proposition that she should not, as a pro se litigant, be held to the same standard as a practicing attorney. However, plaintiff misquotes that case and fails to understand its specific application.

In *Herrera*, this Court opined that *sanctions* "may not be imposed upon pro se prisoner litigants without first affording them rudimentary due process." *Herrera*, 204 Mich App at 339. We stated:

We agree with federal decisions construing FR Civ P 11, that, because of the constitutional issues involved, a prisoner's pro se pleadings are held to a less stringent standard in determining whether there has been a violation warranting sanctions. [*Id*.]

Plaintiff misquotes the above by asserting that *Herrera* states "Because of the constitutional issues involved, a pro se litigant's pleadings are held to a less stringent standard . . . ." *Herrera*, in fact, addressed a *prisoner's* pro se pleadings and only to the extent that such pleadings would be sanctionable. In this matter, plaintiff is not a prisoner and she was not sanctioned for any pleading she filed.

Plaintiff asserts that having her case dismissed and thereafter being subject to the taxation of costs were sanctions imposed upon her as a pro se litigant. While dismissal can be a sanction

imposed due to a litigant's various actions,[4] plaintiff's case was not dismissed as a sanction. Instead, her case was dismissed on summary disposition when the trial court determined that plaintiff failed to respond to defendants' allegation in their summary disposition motion that she was unable to present any expert testimony as evidence of causation to establish that Dr. Stone's alleged breach of the standard of care was the cause of her claimed damages. The trial court specifically stated in its opinion and order granting summary disposition in defendants' favor, "plaintiff failed to direct this Court's attention to any documentary evidence to set forth specific facts demonstrating that there is a genuine issue for trial." Thus, plaintiff's reliance on *Herrera* is misplaced.

Plaintiff also takes issue with the trial court's statement in its opinion and order that "plaintiff failed to present a counter statement of facts or any documentary evidence to challenge the Stone Defendants' statement of facts." Plaintiff asserts that defendants' statement of facts was submitted prior to her counsel's withdrawal, and that her counsel should have responded. However, counsel was permitted to withdraw on September 27, 2018. The "statement of facts" referenced in the trial court's August 19, 2021 opinion and order are the facts stated in defendants' motion for summary disposition filed on June 8, 2021.

Plaintiff also takes issue with other statements in the August 19, 2021 opinion and order regarding plaintiff's failure to respond to arguments made by defendants in their summary disposition brief. The challenged statements are generally just (correctly stated) observations on the trial court's part. And, while pro se litigants are entitled to some leniency in pursuing their claims (See *Haines v Kerner*, 404 US 519, 520; 92 S Ct 594; 30 L Ed 2d 652 (1972)), such leniency is not limitless and court rules must still be followed. *Bachor v Detroit*, 49 Mich App 507, 512; 212 NW2d 302 (1973). "Although pro se briefs are afforded liberal construction, even pro se litigants must brief arguments in order to preserve them." *Mapes v Bishop*, 541 F 3d 582, 584 (CA 5, 2008) (citations omitted).[5] Plaintiff did not adequately brief her arguments in response to defendants' motion for summary disposition and there is no support in the record for plaintiff's assertion that the trial court held her to any standard inconsistent with prevailing law.

And, as with her response to defendants' motion for summary disposition, plaintiff has failed on appeal to present any law or support for her position on this issue. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give issues cursory treatment with little or no citation of supporting authority." *Houghton ex rel Johnson*, 256 Mich App at 339.

---

[4] For example, spoliation of evidence, *Bloemendaal v Town & Country Sports Ctr, Inc*, 255 Mich App 207, 211; 659 NW2d 684 (2002), or failure to comply with a discovery order, *Hanks v SLB Mgt, Inc*, 188 Mich App 656, 658; 471 NW2d 621(1991).

[5] Lower federal court decisions, although not binding on state courts, can be considered for their persuasive value. *Abela v Gen Motors Corp*, 469 Mich 603, 606-607; 677 NW2d 325 (2004).

She has thus abandoned this issue on appeal. *Id.*

      Affirmed.

                                       /s/ Anica Letica
                                       /s/ Deborah A. Servitto
                                       /s/ Noah P. Hood